RISMILLER, Admrx., Plaintiff-Appellee, v. DAYTON POWER & LIGHT COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Darke County.

No. 718.   Decided December 11, 1954.

Myers, Mills, Boesch & Cline, Dayton, By Orel J. Myers, Of Counsel, Goubeaux & Gobeaux, Greenville, for plaintiff-appellee.

Landis, Ferguson, Bieser & Greer, Dayton, Warren A. Ferguson, Of Counsel, Marchal & Marchal, Greenville, Vernon L. Marchal, Of Counsel, for defendant-appellant.

## OPINION

By WISEMAN, PJ:

This is an appeal on questions of law from a judgment of the Common Pleas Court of Darke County entered on a verdict returned in favor of plaintiff in an action for wrongful death instituted by the administratrix of the decedent.

The gist of the plaintiff's second amended petition is:

"Plaintiff says that on July 8th, 1950, the defendant, The Dayton Power and Light Company, through its employees engaged in the regular course of their employment, tied a guy wire attached to an electric transmission line pole to the corner post of a fence situate on the lands owned by the decedent and his wife, Mary Rismiller, and that the decedent on July 10th, 1950 came in contact with said rope and guy wire which at said time and place were charged with approximately 7,000 volts of electricity, and that the decedent on said date at about 6:00 A.M., was then and there electrocuted and died as a result of the high current of electricity going through his body to ground, which was the direct and proximate result of the negligence of defendant, as hereinafter set forth."

Plaintiff alleges five specifications of negligence, as follows:

"Plaintiff further states that the defendant, through its employees and agent while engaged in the regular course of their employment, was negligent and failed to exercise a proper degree of care for the safety of decedent and to the damage of his surviving spouse and next of kin in the following manner and particulars, to wit:

1. In failing to insulate said guy wire between the point where the same was attached to the transmission pole and the lower end thereof which was

attached to the corner post on the lands of the decedent and his wife, as aforesaid.

2. In tying said guy wire to the corner post of the decedent by means of a manila hand rope.

3. In failing to repair said guy wire in a permanent and proper manner so as not to endanger the life of the decedent.

4. In failing to erect warning signs to warn parties endangered of the peril created by the temporary repair as made by the agents and employees of the said defendant.

5. In permitting to remain in said guy wire an object which had the appearance of an insulator but which was in truth and in fact not an insulator."

The defendant in its answer, after making certain admissions, entered a general denial and further pleaded contributory negligence on the part of the plaintiff's decedent in that he failed:

"* * * to exercise ordinary care for his own safety in removing the rope from the corner post to which the guy wire had been attached by defendant's employees without first requesting employees of the defendant to do so, and in attaching a wire to said guy wire, when he knew or in the exercise of ordinary care for his own safety should have known, that there was danger to his life in so doing, and in releasing said guy wire in such a manner that he permitted it to sag and come into contact with energized wires on defendant's pole thereby causing the guy wire to become energized."

Plaintiff's reply was in the nature of a general denial, and further alleged that:

"* * * if it be established by the evidence that plaintiff's decedent attached a wire to said guy wire, removed the rope attached to the guy wire and tied by the employees of defendant, while in the course of their employment, to the cornerpost of a fence situate on the land owned by the decedent and his wife, Mary Rismiller, and that said guy wire became charged by releasing said rope; then said plaintiff's decedent did not fail to exercise ordinary care for his own safety by so doing for the reason that said guy wire was made of two sections of cable joined by what appeared to be an insulator in such a way that if the upper part of said section of said guy wire by being released, came in contact with energized wires on defendant's poles, thereby causing the upper section of said guy wire to be energized that the lower section of said guy wire would not be energized by reason of what purported to be, but in truth and in fact, was not an insulator joining the two sections of said guy wire, but permitted the lower section of said guy wire to become energized."

The matter was thoroughly tried, as shown by a voluminous record, which resulted in a general verdict in favor of the plaintiff in the sum of $40,688.00 and answers to 11 interrogatories. On motion for new trial the trial court granted a remittitur in the sum of $688.00, which was accepted by the plaintiff.

Motions for directed verdict interposed by the defendant at the close of the plaintiff's case, and renewed at the close of all of the evidence, motion for judgment non obstante veredicto, and motion for new trial, were overruled.

The defendant appeals from the order overruling the motion for new trial entered on March 18, 1954, and from the judgment on the verdict entered

October 16, 1953. Appellee contends that the appeal was not filed within time to raise any question as to the order overruling the motion for judgment non obstante veredicto  The time within which to appeal from such order does not begin to run until the disposition of the motion for new trial. See **Hurt v. Rogers Transportation Co., 160 Oh St 70, 74, 76; 113 N. E. (2d) 489.** An appeal before the disposition of the motion for new trial would have been premature. However, in the instant case the notice of appeal is not specifically directed to the order overruling the motion for judgment non obstante veredicto. It becomes unimportant in this case as all questions raised on such motion are raised by the motion for new trial and must be considered and determined. A motion for new trial is no longer simply a re-examination of the facts, but of the facts and law. **Sec. 2321.17 R. C.** (formerly §11575 GC); **Jolly v. Martin Bros. Box Co., 158 Oh St 416, 424; 109 N. E. (2d) 652; Ohio Motors, Inc., v. Charlesworth, Exrx., 88 Oh Ap 299, 97 N. E. (2d) 686; Duemer v. Duemer, 86 Oh Ap 192, 88 N. E. (2d) 603.**

There was evidence presented by both parties in support of the allegations in their respective pleadings. In brief the evidence shows that in about the center of the guy wire there was a strain insulator, sometimes referred to as a "johnnie ball", which was intended to prevent an electric current passing into the lower section of the guy wire in the event the upper section of the guy wire should come in contact with an energized wire and become charged with electricity. There was evidence that on Saturday afternoon, when the guy wire was severed near the ground by a highway mowing machine, the wire snapped and swung near the pole and the wire and the insulator struck the cut-out box on the pole, disconnecting the current to a farm home nearby and causing damage to the insulator at that time. The maintenance crew was off duty and Dunn and Viets, two service men of the defendant company, responded to the call to restore electric service. The two employees noticed the severed guy wire and the insulator in the guy wire. One of them testified that the insulator in the guy wire appeared to be "in good shape". The other testified that as he climbed the pole he observed the insulator and that "it was in perfect shape." There is no evidence that the employes of the defendant company otherwise inspected the insulator. There was evidence of a substantial character that the insulator was cracked and damaged in such a way as to allow the current to pass through it and to energize the lower section of the guy wire. Dunn and Viets made temporary repairs by fastening a hand rope to the lower end of the guy wire and instead of tying it to the anchor, tied it to the corner fence post on decedent's farm. The fence at this place, and leading to the buildings on the decedent's farm, was an electric fence. Early on Monday morning following the Saturday on which temporary repair was made, the decedent removed the rope from the fence post and in handling the guy wire received the electric shock which caused his death.

Defendant-appellant has assigned 13 separate errors. Assignments of error Nos. 1, 2 and 3 relate to the orders overruling defendant's motions for a directed verdict, overruling defendant's motion for judgment notwithstanding the verdict, the sufficiency and the weight of the evidence.

In our opinion there was a sufficient conflict in the evidence respecting negligence of the defendant company and contributory negligence of

plaintiff's decedent to require the submission of the case to the jury. We do not find that plaintiff's decedent was contributorily negligent as a matter of law. Motions for directed verdict and judgment notwithstanding the verdict were properly overruled. We discuss more fully several of the questions raised under assignments of error Nos. 1, 2 and 3, in our discussion of assignment of error No. 13. We do not find the verdict to be contrary to the manifest weight of the evidence.

There is no proper showing that the amount of the verdict was excessive, or given under the influence of passion and prejudice.

We find no error in giving special instructions to the jury before argument, or in refusing to give special instructions requested by the defendant.

Assignments of error numbered 7 to 12, inclusive, relate to the action of the court in connection with the deliberations of the jury. After the jury had deliberated some time it requested a new verdict form in favor of the plaintiff, which was furnished by the court. On two occasions the jury made known it had arrived at a verdict, but each time it was found that the interrogatories submitted had not been answered by the required number of the members of the jury. The court each time instructed the jury to return to the jury room and complete the interrogatories and deliberate upon a verdict. Later, the jury submitted to the court in writing a question respecting their duty to answer interrogatories. The court again instructed the jury, as before. Counsel for the defendant each time interposed objections, and specifically objected to the insistence of the court that the interrogatories be answered and to "the protracted sessions inflicted on the jury." The record shows that the jury began its deliberations at 3:34 o'clock P.M. Over one hour was taken for the evening meal; at 9:20 o'clock P.M. the jury requested a new form of verdict. At 10:50 o'clock P.M. the jury first returned, stating they had arrived at a verdict; at 11:45 o'clock P.M. the court gave the last instruction in answer to the question submitted by the jury. The verdict was returned 8 minutes after midnight. In considering the nature of the action, the issues presented, and the number of interrogatories to be answered, we cannot find that an unusually long period of time was taken by the jury, in arriving at a verdict and answering the interrogatories. The fact that a new form of verdict was furnished the jury does not vitiate the verdict. The fact that the signatures of members of the jury to certain interrogatories have been stricken out, and the question had been re-signed by the required number of jury men, does not render the answers unacceptable. The instructions of the court in this regard were correct and we find no prejudicial error resulting.

In assignment of error No. 13 the appellant contends that the court erred in overruling the motion for new trial. We here discuss the principal question raised by appellant. Several of the questions here discussed are raised by assignments of error Nos. 1, 2 and 3. Eleven interrogatories were submitted to the jury and answered by them. In their answer they stated that the two employees of defendant company were negligent, and that plaintiff's decedent was not guilty of contributory negligence. In answer to interrogatories Nos. 7 and 8 the jury stated that Glenn Dunn, one of the employees of the defendant company, was guilty of negligence proximately causing the death of the decedent, "by not fastening the guy wire

to the anchor". In answer to interrogatories Nos. 9 and 10 the jury stated that Omer Viets, the other employee of defendant company, was guilty of negligence proximately causing the death of the decedent in that "he didn't inspect insulator". Appellant contends that such negligent acts are not alleged in the second amended petition as one of the specifications of negligence and that therefore the plaintiff failed to prove any of the acts of negligence alleged. The answer that the act of negligence consisted in the failure to tie the guy wire to the anchor is tantamount to saying that the negligent act consisted of tying the guy wire to the corner fence post. In our opinion the answer sufficiently responded to specification of negligence No. 2 heretofore mentioned. The answer of the jury that the defendant's employee failed to inspect the insulator responded to specification of negligence No. 3 and No. 5 heretofore mentioned. It cannot be claimed that the answers given to these interrogatories were inconsistent with the general verdict. In Elio v. Akron Transportation Co., 147 Oh St 363, 71 N. E. (2d) 707, the court on page 370 said:

"Nicety in the use of terms is not required of the jury in answering the interrogatories so long as the court is able to gather the intent of the jury from its answer.

Where the answer given may be construed as an answer to the interrogatory it is the duty of the court to accept the same. Such answer should be liberaally construed with a view to ascertaining the jury's reason for its verdict."

Special interrogatory No. 5 was as follows:

"Could Lloyd Rismiller, in the exercise of ordinary care for his own safety, have removed the rope from the fence post without permitting the guy wire to contact an energized wire on the pole and thus avoided the accident?"

The jury answered the question "No". In answering a simple direct question as to whether the decedent was guilty of contributory negligence (Interrogatory No. 11), the jury said "No". Whether Interrogatory No. 5 is answered "Yes" or "No" it may well be claimed that the decedent was guilty of contributory negligence. The interrogatory embraces a trick question. The trial court, in passing on the motion for judgment notwithstanding the verdict found, and we likewise find, that this interrogatory was improperly submitted; the answer should be disregarded. Wells v. Baltimore and Ohio R. R. Co., 58 Abs 225, 97 N. E. (2d) 75. If the answer is construed to mean, as contended by appellant, that decedent was guilty of contributory negligence, then the answer to this interrogatory, and the answer to Interrogatory No. 11, are irreconcilably inconsistent and cancel one another, and the answers should be disregarded. Klever v. Reid Bros. Express, Inc., 151 Oh St 467, 476, 86 N. E. (2d) 608.

The answers to other interrogatories are not inconsistent with each other, nor with the general verdict.

The cases of Greenwall v. Northern States Power Co., 32 N. W (2d) 320, Hetrick, Admr. v. Marion-Reserve Power Co., 141 Oh St 347, 48 N. E. (2d) 103, and Beery v. Northern States Power Company (Minn.), 2 C. C. H. Negligence Cases, 2d Series, 98, are easily distinguishable on the facts.

Finding no error in the record prejudicial to the rights of the appellant, the judgment is affirmed.

MILLER and HORNBECK, JJ, concur.